A. E. Cantrill, Etc., *v.* Thompson B. Eastis.

**Estoppel—Party Advising Purchase of Land is Estopped to Set Up Adverse Claim.**

The appellee was present when the sale of the land was made to appellant. He advised the purchase and talked of buying it himself. He knew the trouble connected with the title. It was his duty to have explained to appellant the character of the vendor's title, and as he failed to do this, he is estopped now to set up an adverse claim to the land.

APPEAL FROM GREEN CIRCUIT COURT.

February 24, 1872.

Opinion by Judge Pryor:

The proceeds of the sale of the girl Francis was applied to the payment of the purchase money for the land in controversy. The boy Albert, who had been exchanged by Eastis with Robinson

for Ellen, the mother of Francis, belonged to the children of Mrs. Eastis, subject to the life estate of the mother. The father of Mrs. Eastis left a last will at his death by which the interest of his daughters in the slaves devised was limited to an estate for life with remainder to their children.

Neither Mrs. Eastis nor her husband had any right to dispose of Albert, so as to divest the children of their interest in him. They both seemed to have been aware of this fact, and the purchaser of the girl Francis, ascertaining from the family or otherwise, that the title to the girl was acquired by the exchange made of Albert, required the children to execute a bill of sale to him, to complete and perfect the title.

It seems clear from the proof that the object in making the sale to Pierce of Francis, was to obtain means in order to enable the parties interested to purchase a small tract of land for Mrs. Fulks, one of the daughters of Eastis and wife. The land was bought of a man by the name of Scott, and although he testifies that the money was paid him by old man Eastis for the land, a fact which is doubtless true, still it is equally certain that the money and notes he (Scott) obtained for his land, was the proceeds of the sale of the slave Francis to Pierce. Scott is evidently mistaken in stating that he executed a bond for title to this land to old man Eastis.

A number of witnesses saw the bond after it was executed in the possession of Mrs. Eastis, and say that the bond was executed to her, and that she was then expressing fears that Mrs. Fulks might, in the event the bond was lost, be deprived of her interest in the land.

It appears that during the lifetime of the mother, that the three surviving children were all allotted a small tract of land each, by Mrs. Fulks, Martha Pierce and Thompson B. Eastis, and entered into the possession.

After the mother's death, which occurred before her husband, this division of the land seems to have been disregarded, and the father (old man Eastis) asserting as he does now, that the bond for the title to this land was executed to him, obtained a deed from the vendor Scott to himself, and at his death left a last will of which he devises this particular land to Thompson B. Eastis, the plaintiff in the present action.

This will disposes of no other estate of the old man of any kind or description than the land on which Mrs. Fulks lived.

Thompson B. Eastis and Mrs. Pierce held title to this land in the same way. They had no other title than Mrs. Fulks', and seemed never to have obtained, so far as this record shows, any other evidence of title than the mere possession under the purchase made by their mother in her lifetime and perhaps by the father and mother jointly.

The tract of land occupied and sold by Mrs. Pierce may have been purchased and doubtless was, by the proceeds of the father's land or out of his own means, but the land in controversy was certainly purchased with the money to which these children were entitled after the mother's death. After Mrs. Fulks was placed in the possession of this land the present appellee, knowing the manner in which she held the title, purchased it from her, and took her bond for title. This sale, however, was cancelled and was made for no other purpose, as the proof shows, than to prevent the creditors of Mrs. Fulks from subjecting it to the payment of her debts. The proof also shows that old man Eastis, after the death of his wife, and while Mrs. Fulks was in possession, asserted a claim of ownership over it, and even rented it out, but this action on the part of the father is explained by testimony showing that this asserted ownership of the land by him, was made for the same purpose that the sale of the land was made by Mrs. Fulks to the present appellee, viz., for the purpose of preventing a sale of it to pay the daughter's debts.

The present appellee and his sister, Mrs. Risen, had each obtained their full share of the land left by either the mother or the father, and if they held under no other title, and in the same that Mrs. Fulks did, it is difficult to perceive how they can hold their land and Mrs. Fulks be deprived of hers, and conceding that the land belonged to the father and that he had the power to *dispose* of it, then the appellee can hold the present land under the will, the title of the property given by the father to himself, and Mrs. Risen, being of no more validity than the title of Mrs. Fulks to her land, the latter by virtue of the 17th section of the Revised Statutes, I. Vol., page 426, Chap. Descents and Distribution, would have to be made equal out of the undevised estate with the other children before they could claim any part of it. We are satisfied, however, that the old man had no right to this land, and could not dispose of it by deed, will or otherwise, and that the manner in which he can deem himself to be the owner was by the repeated efforts of himself and son to relieve it from the burden of Mrs. Fulks' debts.

The appellee could not recover this land even if the advancements had been equal and the title perfect in the father when he made the will. He was present when this sale was made to the appellant by Mrs. Fulks. He advised the purchase and talked of buying it himself. He then knew the trouble connected with the title. It was his duty, instead of advising the appellant to buy his sister's land, to have explained to him the nature and character of her title, and as he failed to do this, and his own statements in regard to this sister's claim inducing, doubtless, the appellant to make the purchase, he is estopped now to set up any such adverse claim as he is attempting to assert.

The judgment of the court below is reversed and cause remanded with directions to the court below to dismiss appellee's petition and permit amended pleadings to be filed, if necessary, requiring the children and heirs of old man Eastis to convey the land to the appellant and for further proceedings consistent herewith.

*Howell and W. H. Chelf, for appellants.*

*James, for appellee.*